```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF INDIANA
 2                     SOUTH BEND DIVISION

 3       BRAD A. MART,              ) Cause No:
                                    ) 3:10cv00118-JTM-CAN
 4                 Plaintiff,       )
                                    )
 5             vs.                  )
                                    )
 6       BERKSHIRE HATHAWAY, INC.,  ) South Bend, Indiana
         FOREST RIVER, INC., and    ) July 26, 2010
 7       PETER J. LIEGL,           ) 11:00 a.m.
                                    )
 8                 Defendants.      )
         _____)
 9

10

                 TRANSCRIPT OF MOTIONS HEARING
11        BEFORE THE HONORABLE CHRISTOPHER A. NUECHTERLEIN

12
         APPEARANCES:
13
         For the Plaintiff:        MS. ANGELICA CATHERINE SCHULTIS
14                                 Attorney at Law
                                   313 Runaway Bay Circle
15                                 Apartment 2A
                                   Mishawaka, Indiana  46545
16
                                   MR. STEPHEN A. KENNEDY
17                                 MR. STEVEN E. CLARK
                                   Kennedy Clark & Williams PC
18                                 1700 Pacific Avenue
                                   Suite 1280
19                                 Dallas, Texas  75201

20
         For Defendant Berkshire
21         Hathaway, Inc.:         MR. MARTIN J. GARDNER
                                   MS. KRISTY M. RANS
22                                 Gardner & Rans PC
                                   603 Wells Fargo Bank Building
23                                 112 West Jefferson
                                   South Bend, Indiana  46601
24

25
```

```
 1    APPEARANCES CONTINUED:

 2

 3    For Defendant Berkshire
         Hathaway, Inc.:          MR. CARY B. LERMAN
                                  MS. LIKA C. MIYAKE
 4                                Munger Tolles & Olson
                                  355 South Grand Avenue
 5                                35th Floor
                                  Los Angeles, California 90071
 6
      For Defendant Forest River
 7       and Peter Liegl:         MS. JEANINE M. GOZDECKI
                                  MR. GERALD F. LUTKUS
 8                                Barnes & Thornburg LLP
                                  600 1st Source Bank Building
 9                                100 North Michigan Street
                                  South Bend, Indiana  46601
10
                                  MR. RONALD L. LIPINSKI
11                                MR. STEVEN J. PEARLMAN
                                  Seyfarth Shaw LLP
12                                131 South Dearborn Street
                                  Suite 2400
13                                Chicago, Illinois  60603

14

15

16

17

18

19

20

21

22

23                 Joanne M. Hoffman
               United States Court Reporter
24             119 Robert A. Grant Courthouse
                   204 South Main Street
25              South Bend, Indiana  46601
                     (574) 246-8038
```

```
1                THE CLERK:  Cause Number 3:10cv118, Brad A. Mart v.
2    Berkshire Hathaway, Inc., et al.
3                Would counsel please state your appearance.
4                MR. KENNEDY:  Your Honor, Stephen Kennedy on behalf
5    of the plaintiff, Brad Mart.
6                THE COURT:  Mr. Kennedy.
7                MR. CLARK:  Steven Clark on behalf of the plaintiff,
8    Brad Mart.
9                THE COURT:  Mr. Clark.
10               MS. SCHULTIS:  Angelica Schultis on behalf of
11   plaintiff, Brad Mart.
12               MR. LERMAN:  Good morning, Your Honor.  Cary Lerman
13   on behalf of Berkshire Hathaway.
14               THE COURT:  I've got it.  Mr. Lerman.
15               MS. MIYAKE:  Your Honor, Lika Miyake, also on behalf
16   of Berkshire Hathaway.
17               MS. GOZDECKI:  Your Honor, Jeanine Gozdecki on
18   behalf of Forest River, Inc., and Peter Liegl.
19               THE COURT:  Ms. Gozdecki.
20               MR. LIPINSKI:  Ronald Lipinski on behalf of Forest
21   River, Inc., and Peter Liegl.
22               THE COURT:  Mr. Lipinski.  We have them all.  It
23   looks like we've got folks in the audience, as well.
24               Just some minor matters before we get started.  My
25   appearance is caused to a surgical intervention with respect to
```

```
 1    my shoulder.  After 50, the warranties expire.  So for those of
 2    you who have not yet crossed that milestone, beware.  For those
 3    of you who have, you know what I am talking about.  I have just
 4    had rotator cuff surgery about ten days ago.  So although I am
 5    normally right-handed, I am going to try and take notes -- but
 6    with the benefit of the court reporter, perhaps, fewer -- since
 7    I can't write quite as well with my left as I can with my
 8    right.  But all things considered, I think we can go forward.
 9            Let me go over a few things just to set some
10    context.
11            On June 17th, the plaintiff filed its emergency
12    motion for discovery -- to take limited discovery on issues
13    related to Rule 12(b) motions that had been filed by the
14    defendants.
15            On June 21, I set a hearing for this date and time
16    and indicated in the order that I would reset the timetable and
17    schedule of responses on motions -- to the responses to the
18    motions to dismiss.
19            So after we discuss whether and to what extent
20    discovery should be had in this case, counsel should remind me
21    that we reset those deadlines, or at least have the discussions
22    to what would be appropriate deadlines so that can be picked
23    up.
24            July 1st, defendant Forest River filed its response
25    to the plaintiff's motions.
```

1          July 6th, defendant Berkshire Hathaway filed its

2    response, so the matter is now ripe.

3          Now, in reading the respective positions of the

4    parties, I am a little bit concerned -- I think I have a better

5    understanding this morning, but I was a little concerned as to

6    the standard that should be applied.

7          By the way, I presume that no one has raised -- and

8    I presume you haven't raised it because it's not appropriate --

9    any Rule 45 concerns, because it sounds like any depositions

10   that would be had would be to nonparties beyond the 100-mile

11   limits of this court's jurisdiction under Rule 45, so subpoenas

12   would not normally be issued by this court for those

13   individuals.  That would have to be from the place in which

14   those depositions would be taken, but that hasn't been raised.

15         I don't think we are yet at the threshold question

16   of that.  It's just a question of whether any discovery at all

17   should be, so we will deal with that.

18         Here is the question that I am wrestling with:  What

19   is the appropriate standard I should apply to this

20   circumstance?  It seems to me, if I've read the plaintiff's

21   argument correctly, that they believe that in order to invoke

22   the personal jurisdiction requirements under this court that

23   minimal contacts is all that is necessary.  And minimal, by

24   their terms, is quite minimal, indicating just a few phone

25   calls would suffice, and they cite one or two Indiana decisions

1    for that proposition.  So it doesn't take much, a few phone

2    calls, and you find yourselves in court.

3           The defendants, primarily Berkshire Hathaway, argues

4    that no, no, no, this requires much more than just a few phone

5    calls.  It requires rather substantial affirmative conduct by

6    the defendants to be subjected to the jurisdiction of the

7    court.  And in the context of a corporation that has a

8    wholly-owned subsidiary, the mere, quote-unquote, acquisition

9    of a subsidiary corporation in one state -- we'll say

10   Indiana -- is not enough.

11          If the subsidiaries have been attempting to maintain

12   a separate identity by having separate boards of directors, it

13   requires something much more on the larger corporation, the

14   parent, to trigger the minimal contacts.  It requires

15   day-to-day decision-making or, perhaps, a view that the

16   subsidiary is a mere shell and shouldn't be given much

17   protection; that the true actor behind what the subsidiary is

18   doing is, in fact, the parent.

19          So the court needs to take a closer look at it.

20          But if it's in all respects appropriate, a few phone

21   calls is not sufficient.  And, secondly, we have to look a

22   little bit more closely, perhaps, as to the phone calls:  Were

23   they initiated by the defendants, or were they in response to

24   the plaintiff's attempt to contact the defendants and, if you

25   will, a callback or a reply?  The latter seems to be less

1  significant than the former.

2          Before we get to all of those interesting issues of

3  civil procedure, let's talk about another issue of civil

4  procedure; that is, our local rules.  I want to hear why or how

5  the Local Rule 37.1 has been satisfied and I should discuss

6  these issues at all, or whether it hasn't, or it's close enough

7  for government work, Judge, so let's just move on.

8          I am concerned about whether the plaintiff, who

9  seeks the relief, has complied with the local rules on that.

10          So with that kind of setting the stage, I would now

11  like to hear from the plaintiff, and let's address, first, the

12  Rule 37.1 issue on timeliness of your motion.

13          Mr. Kennedy, is it you?  At least you have stood.

14          MR. KENNEDY:  It is I.

15          THE COURT:  You may begin.

16          MR. KENNEDY:  May it please the court.

17          Your Honor, I do want to confirm -- you didn't

18  mention this -- that the court is aware of our reply brief

19  filed on July 16, 2010.

20          THE COURT:  I am.

21          MR. KENNEDY:  Very good.  Because we address in

22  that, that very issue concerning the jurisdiction.  We also

23  amended on that same day the Certificate of Conference; and in

24  the Certificate of Conference, we provided the court with the

25  20-some communications between and among counsel on the issue

1   of whether we could find a way to resolve the discovery issues.

2          I will represent to the court that for two weeks

3   prior to filing the motion, we sent communications back and

4   forth requesting specific depositions.  And the answer from

5   Forest River was always:  No, you haven't demonstrated that you

6   need it, but we're willing to listen; and if you can provide us

7   with more information, then we will reconsider.

8          That went back and forth on a number of occasions.

9   And we would provide more information.  And later on actually

10  they used that information -- which we will get to in a

11  moment -- to try to demonstrate that after we provided all of

12  this information regarding what plaintiff was aware of to

13  establish a colorable basis for the discovery, after we

14  provided them all the information in the first 11 letters and

15  then 22 letters -- I believe it was 22 -- that still wasn't

16  enough to have a colorable basis, but it establishes:  You've

17  got all of the information you need, so you don't have to have

18  the discovery.

19          THE COURT:  If I understand their response, they

20  were indicating -- maybe I have misunderstood it -- that your

21  request for discovery continued to escalate.  Initially it was

22  the deposition of one, perhaps Hathaway, and then it grew to

23  maybe up to now four, and that it grew even postfiling the

24  initial motion seeking leave to take discovery.

25          So rather than having a series of negotiations and

1    then saying, okay, we can't resolve it, we're now going to

2    court, it was kind of like you're running on parallel paths, so

3    let's get the motion in front of the court and, meanwhile,

4    let's continue to span the scope of discovery, which seems to

5    me that that is not what Rule 37.1 is all about.  You come here

6    after you've exhausted your attempts to resolve it informally.

7         MR. KENNEDY:  They do a wonderful job of making it

8    appear we have expanded the discovery, and I take my hat off to

9    them for that, but the facts do not comport with that

10   representation.

11        When we first got the 12(b)(6) motions, Your Honor,

12   we asked for the depositions of Mr. Greenlee, Hamburg, Liegl,

13   Rowe and Mr. Buffett.  We, after communicating back and forth

14   with counsel, dropped several of those depositions.  We dropped

15   Mr. Greenlee's deposition notice.  We dropped Mr. Liegl's

16   deposition notice.  So we dropped those two.  And as we studied

17   the information further, we decided that we didn't need those.

18        However, the information provided to us in our own

19   research showed that, instead of them, it would be more

20   efficient if we had two other witnesses.  So while, on the one

21   hand, they make it look like we started with three or four and

22   expanded it to five, six or seven, in fact, we reduced it over

23   the two-week time period as time went on from certain witnesses

24   to eliminate them, and then say, after further consideration,

25   we need these other witnesses; it will be more efficient.  They

1   have the exact information we need; these other people, we

2   concede, do not.

3           THE COURT:  All right.  So you're saying that your

4   request for discovery did not expand following the filing of

5   your motion seeking limited discovery?

6           MR. KENNEDY:  It changed.  We reduced some; added

7   others.

8           THE COURT:  But the fact that it changed suggests

9   then that the motion wasn't ripe.

10          MR. KENNEDY:  Well, actually, Your Honor, that is

11  not correct; because as we presented our motion at that point

12  in time, we had already made the change, and we had informed

13  them before we filed the motion that we were dropping

14  Mr. Greenlee, we were dropping Mr. Liegl, and that, instead, we

15  needed the other parties.

16          So the only thing we have done postfiling the

17  motion, Your Honor, is to reduce the witnesses by one.  We have

18  now said that, all right, after reading their briefs -- and you

19  see this in our reply brief -- we say, all right, in our

20  initial motion we have said this.  Now that they have made all

21  of these formal legal arguments, I see their point with one

22  witness; and I have said that if we get the deposition of

23  Mr. Buffett, that we will not need the deposition of one

24  witness, and so we have in our reply brief dropped one

25  deposition notice.

1    THE COURT:  All right.  So you view that what has

2    changed subsequent to filing your motion is that the issues

3    have become narrower because you have reduced your requests for

4    depositions?

5    MR. KENNEDY:  That is correct, Your Honor, and we

6    have also reduced the time period from what would normally be

7    permissible under the federal rules to three hours.

8    THE COURT:  All right.  I'm going to ask you to step

9    aside because I want to stay on the 37 before we get to the

10   other issues.

11   If either of the parties, Berkshire Hathaway or

12   Forest River, wishes to respond just to 37.1, as to what are

13   the deficiencies that still remain, if any.

14   MR. LERMAN:  Good morning, Your Honor.  Cary Lerman

15   for Berkshire.  I am going to respond very briefly to say that

16   we attempted to have a good-faith meet-and-confer with

17   plaintiff's counsel trying to narrow the issues.

18   We learned about their desire to take the deposition

19   of Mr. Forrest Krutter, the general counsel of Berkshire, only

20   three days before they filed their motion, so we were still in

21   the process of trying to understand:  Why did you need his

22   deposition; was there some other way to do it?

23   We learned that they wanted to take the deposition

24   of Mary Ann Todd -- that's one of my corporate partners -- only

25   when they filed their motion.  They had raised the issue with

1   us, but had not told us that they definitely wanted to take her

2   deposition.  We hadn't had a meet-and-confer over it, and then

3   we got the motion and we find out for the first time that, my

4   God, they want to take her deposition.

5           So we don't think that hardly qualifies for a

6   good-faith meet-and-confer on those two individuals.  We had

7   tried to resolve this matter, saying to plaintiff's counsel

8   that we don't think you have a colorable basis with

9   jurisdiction.  We did submit the declaration of Mr. Marc

10  Hamburg.  He is the CFO of Berkshire.  If you want to take his

11  deposition as a way of resolving all of this, all right, take

12  his deposition and have his deposition for three hours, and

13  let's take this off the court's calendar.  That wasn't good

14  enough.

15          So we were quite surprised by what we saw as the

16  expanding nature of plaintiff's attempt to take depositions of

17  Berkshire Hathaway.

18          That said, we are all here, Your Honor.  We are

19  prepared to address the discovery issues and prepared to

20  address the preliminary questions that Your Honor has raised,

21  so there is a certain question of efficiency.

22          THE COURT:  All right.  Anyone from Forest River

23  want to be heard on this?

24          MR. LIPINSKI:  Yes, Your Honor, Ronald Lipinski.

25  One of the things about the 37 was that we had not received a

```
 1    deposition notice for Mr. Jeff Rowe.  It arrived on the same

 2    day that we received the motion to compel.  So there were

 3    ongoing discussions.  We were trying to get to the point with

 4    the plaintiffs -- we were trying to engage in what we believed

 5    to be a good-faith attempt to get there.  We agree that they

 6    did drop the request for the deposition of Mr. Liegl and

 7    Mr. Greenlee.  We did have discussions about whether Mr. Rowe's

 8    deposition was necessary, and the plaintiff said we had no

 9    other information, and we disagree with what we have learned

10    that Mr. Rowe is there.

11           So, again, I agree that while there wasn't, perhaps,

12    technical requirements with the 37, we are here and prepared to

13    also address the issues.

14           THE COURT:  Well, the fact that you are already here

15    doesn't satisfy compliance.  I am here, too, but I shouldn't be

16    if there had been compliance.  This matter could have been

17    resolved.

18           I am going to assume that there hasn't been total

19    failure of the requirements of Rule 37, but I'm not convinced

20    necessarily that there has been full compliance with it.  It

21    seems like things were fast developing.  Communication was

22    going around and among the various counsel that are involved in

23    this piece of litigation.  E-mails were being traded back and

24    forth.  I'm not entirely clear how many serious -- I mean

25    serious -- either telephonic conferences were held to try to
```

1    minimize the court's work or not, so I'm going to take the

2    Rule 37 issue under advisement.  I'm not going to rule that

3    it's been sufficiently satisfied.  I want to digest on it.

4         Let's get to the merits, but counsel should be

5    forewarned in future litigation in this court that 37.1 is

6    important.  Because of the volume of litigation that we handle,

7    we encourage and require counsel to resolve matters and only to

8    file motions when it is the absolute last result.

9         Now let's get on to the question of what is the

10   standard that the court must impose.  Again, the plaintiff, as

11   I indicated earlier, suggests it's quite small.  It's quite

12   little.  Minimal means minimal.  And a few phone calls should

13   be sufficient.  And I think they cited some case -- I think I

14   have the *Woodmar* case as one and maybe *Rosowky* is another from

15   Indiana.

16        But, Mr. Kennedy, if you are the one who is going to

17   be arguing this, tell me what the law is with respect to what

18   standard the court must apply to questions of limited

19   jurisdiction on issues regarding motions to dismiss.

20        MR. KENNEDY:  Thank you, Your Honor.

21        In the motions to dismiss, they raise not only

22   personal jurisdiction, but they also claim that plaintiff is

23   not a SOX -- or a Sarbanes-Oxley -- plaintiff, in that he did

24   not timely file that.

25        THE COURT:  That's a statute of limitations

1    question.

2           MR. KENNEDY:  More or less.  That's a good analogy.

3    But the statute requires something to be filed in a specific

4    period of time and they claim he didn't do that.

5           On the issue of general jurisdiction, that is when

6    the question of minimal contacts arises.  It is plaintiff's

7    position that there is both general jurisdiction based not just

8    on the phone calls -- but that's one factor -- but also based

9    on the extent of the control that the parent company had over

10   the subsidiary.  And that is why we have requested depositions

11   such as Mary Ann Todd, who is an attorney with the firm that's

12   trial counsel here for Berkshire, because she exchanged -- as

13   you can see in the reply brief and the supporting declaration

14   of Mr. Brad Mart, the supplemental declaration, he states that

15   he exchanged some -- while employed at Forest River -- more

16   than 150 e-mail messages from Ms. Todd, who was acting on

17   behalf of Berkshire Hathaway in various transactions involving

18   Forest River.

19          So we also have the issue of control as to whether

20   Berkshire Hathaway controlled Mr. Mart's employment, and we

21   rely on telephone conversations to demonstrate that control.

22   So it's not just that there were several telephone

23   conversations that create the general jurisdiction, it is:  Was

24   there control and what was said during the telephone

25   conversations to establish sufficient control by the parent

1  company over the subsidiary to establish the minimum contacts

2  necessary for jurisdiction?

3          So in response to your question, Your Honor, I don't

4  think that it's fair to say we're just relying on phone calls

5  made to the state of Indiana by Mr. Buffett to my client.

6  We're also looking at what he said in those conversations, such

7  as:  Mr. Mart, you and Pete Liegl need to come to Omaha and one

8  of you is going to lose your job.

9          That demonstrates an exercise of control over the

10  employment status of my client and the control over who's

11  running the business.

12          THE COURT:  All right.  But what control?  Obviously

13  when you have a parent that owns a subsidiary, of course there

14  is control; they own it.  So is that the only question?  It

15  seems like you need something more than that, don't you?

16          MR. KENNEDY:  Well, that's where we examine the

17  extent of the control.  Did they have any control over

18  employment decisions?  That's one factor that would have to be

19  considered.

20          THE COURT:  Let's ask this question:  Does Forest

21  River have its own board of directors?

22          MR. KENNEDY:  Yes.

23          THE COURT:  Separate and apart from the parent?

24  They've got separate management?

25          MR. KENNEDY:  That's something that I think we would

1    contest, Your Honor.  It's our position that the CEO of Forest

2    River is actually controlled by Berkshire Hathaway.  So I don't

3    know that it's fair -- based on the facts that we have and the

4    facts that we wish to establish -- for the court simply to

5    assume that's the case.

6            THE COURT:  All right.  Are you alleging that Forest

7    River -- excuse me -- that Berkshire Hathaway engaged in

8    day-to-day management decisions and control of Forest River?

9            MR. KENNEDY:  Some day-to-day management, yes,

10   Your Honor.

11           THE COURT:  What does that mean?

12           MR. KENNEDY:  Okay.  For example, if Forest River is

13   going to acquire Coachmen -- which is something that, in fact,

14   was negotiated -- how and what role does Berkshire Hathaway

15   play in whether Forest River acquires Coachmen?  Same thing

16   with when Forest River was looking to acquire Priority One.  In

17   both of those instances, the management of Berkshire Hathaway

18   was heavily involved and required Forest River to use Mary Ann

19   Todd as the lawyer to negotiate from a legal standpoint the

20   transaction.  Then when the transaction had to be approved,

21   Mr. Hamburg and Mr. Buffett had to approve whether Forest River

22   acquired the company.

23           So we have some examples of that control,

24   Your Honor; and through this discovery, we believe we can

25   establish other things, such as the money flow and the capital

1   contributions.  And there may be other things that we can find

2   in discovery.

3          THE COURT:  Isn't there a presumption that Berkshire

4   is not subject to this court's jurisdiction if it maintains

5   corporate formalities?  And I'm referring to *Central States*.

6   Wasn't *Central States* the case where the Seventh Circuit was

7   more concerned about concerns of due process; that as long as

8   there are -- the formalities are maintained and that the

9   subsidiary is not a mere shell or the alter ego for the parent,

10  that it fails to meet the jurisdictional test?

11         MR. KENNEDY:  *Central States*, Your Honor, holds that

12  there was no colorable basis for the discovery.  In other

13  words, the plaintiff failed to establish that there was some

14  way he could demonstrate the control issue; and, therefore,

15  since he couldn't establish the control issue, it appeared to

16  be just a fishing expedition; and, therefore, because there was

17  no evidence of the parental control offered by the plaintiff,

18  no discovery should be permitted, and that is the law.

19         But in our case, the plaintiff -- through his

20  initial declaration and his supplemental declaration filed with

21  the reply -- establishes the points in which we demonstrate a

22  colorable basis for control.

23         THE COURT:  All right.  The defendants also advance

24  in their argument that you don't need discovery because you

25  know much of what you seek.  You apparently gave rather

1   specific statements regarding the date, time, subject matter of

2   various conversations, and so you already know that.  So then

3   what would be advanced and what would be the point of taking a

4   deposition on those matters?

5          MR. KENNEDY:  Well, that's exactly the circular kind

6   of logic, Your Honor, that they use here.  On the one hand,

7   they say there is no colorable basis, and then on the other

8   hand they say, well, you've obviously got the information so

9   you don't need it; it's duplicative.  In fact, Your Honor, what

10  we are seeking --

11         THE COURT:  Well, it is easy to move from this

12  discussion into a discussion on the merits of the motions to

13  dismiss.  I don't see that that is essentially my question.

14  That's before Judge Moody, the presider.

15         What I understand their argument to be is:  Make

16  your argument to Judge Moody.  Make your argument that these

17  are the conversations that took place.  Your client was

18  certainly a party to them.  This is what was said.  And then

19  Judge Moody can decide whether that is sufficient to establish

20  jurisdiction or not.  That's where the 12(b)(6) or 12(b) motion

21  lies.  We're here just on whether we need further discovery on

22  that point, and that's why I say it is not germane.

23         MR. KENNEDY:  Your Honor, the question isn't whether

24  my client has some information.  The question is whether he

25  under the federal rules is allowed to get independent

 1    collaboration of what he believes the facts to be.  So, yes,

 2    Your Honor, we will go before Judge Moody, and my client will

 3    have his declaration saying certain facts.  Then the question

 4    becomes:  Who does the judge believe?

 5            Now, if Your Honor is saying if we know certain

 6    facts and we're not allowed to corroborate that testimony, or

 7    if we're not allowed to supplement it or get additional

 8    information and probe the issues so that we can find out more

 9    information, if Your Honor is saying that, I would respectfully

10    suggest that is not what the court has held -- what this court

11    very court has held -- in *Andersen*.  Because in *Andersen* the

12    court says -- Judge Cosbey provides the statement that you have

13    to provide a colorable basis, and he also says that depositions

14    are the most efficient way do that.  But there is no case --

15    and if you actually read what the defendants say at page 10 of

16    their brief, that it would simply duplicate the testimony -- if

17    you actually read those cases, Your Honor, those cases do not

18    support the position that they are advancing.

19            I believe they cite three cases in there and they

20    say nothing about the issue of whether a plaintiff can get

21    corroborating -- independent corroborating and supplemental

22    information that would support his position.

23            To suggest that plaintiff simply has enough on his

24    own would require my client, therefore, to hope that Judge

25    Moody will find his statements to be credible, his statements

1    to be more credible than the statements of Berkshire Hathaway

2    and Forest River.  And since the plaintiff has the burden of

3    proof to overcome the jurisdictional challenge, the claim that

4    he is not a SOX plaintiff and the claim that he did not timely

5    file his action, if that is the case, then we are changing the

6    state of law in the Northern District per the *Andersen* case and

7    the *Owner Operator* case, which provides a different standard,

8    Your Honor.

9          THE COURT:  Well, let me say, we're not changing the

10    law in the Northern District of Indiana.  Judge Cosbey is a

11    colleague of mine and a good friend; but while that can be

12    persuasive, it's not controlling.  So if he were to have a

13    different view than I, I would respect it, and I would hope he

14    would respect if I have a different view than he does.  So

15    we're not necessarily changing it; we might just have a

16    different perspective on what the law requires us to do.

17          MR. KENNEDY:  My point remains, Your Honor, that if

18    we take a very restrictive view of those cases, my client will

19    be prejudiced because he will be required to rely only on his

20    own testimony when the more persuasive testimony could be

21    obtained from Berkshire Hathaway's witnesses who they refuse to

22    provide in deposition.  And I would suggest that such a ruling

23    would be inconsistent with the spirit of the other two

24    decisions from Judge Cosbey.

25          And I would like to point out, Your Honor, that we

```
 1   are also alleging that there is specific jurisdiction here
 2   arising out of the contacts which I was about to mention.  In
 3   addition to the general jurisdiction, we're also alleging
 4   specific jurisdiction, in that the calls from Warren Buffett to
 5   my client -- where he said you both need to come to Omaha and
 6   one of you is going to be fired -- and that he is now saying
 7   that he was fired because he reported unlawful conduct -- that
 8   that creates the specific jurisdiction necessary to prevail on
 9   his claim; and so this court should allow discovery so that he
10   can, again, obtain corroborating evidence on what was said.
11         Now, it's important to note that in their brief,
12   Your Honor, in their 12(b) motion, Berkshire takes the position
13   that there were no contacts or that Berkshire did not initiate
14   any contacts with my client.  And if they are taking the
15   position that my client -- or that Berkshire initiated no
16   contacts with Brad Mart, then there is a fact dispute, and we
17   can demonstrate that fact best by asking Mr. Buffett:  Isn't it
18   true that you contacted Mr. Mart, and isn't it true that during
19   that conversation you told him that he needed to fly to Omaha
20   with Mr. Liegl and one of them would be terminated?  And later
21   on he in fact was terminated, and he was terminated because he
22   reported this unlawful conduct.
23         So in a 12(b) context, what we have are disputed
24   facts which my client ought to be able to disprove so that he
25   can establish specific jurisdiction over the defendant.
```

1          There are a number of cases, Your Honor, that

2     specifically say -- there are a line of cases that say a

3     plaintiff should be allowed to corroborate his own testimony in

4     jurisdictional cases.  And those I have here.

5          The *Tese-Milner* case, 613 F.Supp.2d 404; the *Alfred*

6     *Faiella* case, which is a Westlaw 2008 case, 1790410; *Expert*

7     *Microsystems v. University of Chicago*, 2009 Westlaw 1949103.

8     There's two others, *Orchid Biosciences v. St. Louis University*,

9     and that's 198 F.R.D. 670, and *Wells Fargo*, 556 F.2d 406.  A

10    line of cases, Your Honor, that say the plaintiff should not

11    simply have to sit on his own declaration in an effort to

12    defeat the 12(b)(6) motion or a 12(b) motion when he has the

13    burden of proof, and that he should be allowed to corroborate

14    and supplement his testimony.

15          THE COURT:  Mr. Kennedy, let me see if I can

16    summarize and get to your point quickly because I want to hear

17    from the defendants.

18          You're saying it's not just the phone calls; it's

19    what your client relates as the subject matter of the phone

20    calls, what was discussed, and that those show the degree and

21    control of the parent over the subsidiary sufficient to allow

22    this court to exert jurisdiction over the parent, and that the

23    declarations of the plaintiff should not be standing out there

24    naked and alone, but you should be allowed the opportunity to

25    corroborate that to make your point and to prove the

 1    jurisdiction; is that a fair summary?

 2           MR. KENNEDY:  Your Honor, actually I think we're

 3    stuck on phone calls, because it would appear that all of our

 4    argument is based on control exercised as evidenced through

 5    phone calls, and I don't want to get stuck on that.  We are

 6    saying that there were phone calls and that that's one level or

 7    one piece of evidence, but we go beyond the phone calls to say

 8    what their actions were, such as:  Requiring Forest River to

 9    use Mary Ann Todd for acquisitions; requiring Forest River to

10    get approval from Marc Hamburg and Warren Buffett for the

11    proposed acquisition of Priority One, which closed, and which

12    Mr. Hamburg and Mr. Warren Buffett approved, and the proposed

13    acquisition, which did not occur, of Coachmen, which was not

14    approved.

15           This is the colorable basis that we present to the

16    court -- not just the phone calls, but the actions outside of

17    the phone calls -- to support the position there was both

18    general and specific jurisdiction and that he is a SOX

19    plaintiff and that he did not miss the deadline to file his

20    Department of Labor complaint.  So that's the colorable basis

21    we present to the court so that we may have the discovery that

22    we're requesting.  So I want to make sure we are not stuck on

23    phone calls as the only connection.

24           THE COURT:  The phone calls tie in Mr. Buffett,

25    because those are the phone calls there.  That's what I was

1   referring to with respect to him; is that correct?

2          MR. KENNEDY:  Yes, Your Honor.

3          THE COURT:  And is it Mr. Hathaway, he's the one who

4   submitted the affidavit?

5          MR. KENNEDY:  Mr. Hamburg.

6          THE COURT:  Excuse me.  Hamburg.  He submitted the

7   affidavit essentially saying the things that Berkshire Hathaway

8   is not doing in the state, and then the Munger Tolles attorney.

9          MR. KENNEDY:  Then Mr. -- I believe his name is

10  pronounced Rowe from Forest River, who is the person who claims

11  that he was terminated on a specific date, which we contest,

12  and that has to do with the SOX issue.

13         THE COURT:  All right.  I think I've summarized and

14  understand better your argument.  I appreciate that.

15         Let me now turn to the defendants, either Berkshire

16  Hathaway or Forest River, whoever wishes to proceed.

17         MR. LERMAN:  Thank you, Your Honor.  Cary Lerman

18  again for Berkshire Hathaway.  I will go first for the

19  defendants since most of the plaintiff's discussion seems to be

20  directed against Berkshire.

21         To answer Your Honor's question as to what the

22  standard is, we look to see what the basis that the plaintiff

23  is asserting for jurisdiction.  I hear that plaintiff is

24  asserting both general jurisdiction, which means Berkshire did

25  something to subject itself to jurisdiction in Indiana for all

1   purposes, not just this case, and also claiming specific

2   jurisdiction, that Berkshire did something with respect to this

3   controversy which subjects Berkshire to the jurisdiction of the

4   court in this matter.

5          The court's reference to the *Central States* decision

6   is exactly the right reference, where the court said that the

7   plaintiff has to come forward with a colorable basis for

8   jurisdiction in order to support discovery.  Otherwise you've

9   bootstrapped yourself into subjecting a foreign defendant to

10  the jurisdiction of the court for the purpose of discovery if

11  you don't even have to show a colorable basis.

12         Again, it's the *Central States* decision that says

13  what kind of burden the plaintiff has to show general

14  jurisdiction.  Obviously every parent of a wholly-owned

15  subsidiary exercises some degree of control over the

16  subsidiary.  It's its investment; it has to do that.

17         What *Central States* says is that in order to show

18  jurisdiction over a parent because it owns a subsidiary, the

19  plaintiff has to show an unusually high degree of control.  It

20  uses the words "day-to-day management control" or an "abnormal

21  degree of control."  That's what we're taking about.

22         We're not talking about a parent that has a

23  subsidiary upstream dividends to it.  We're not talking about

24  when a parent will get involved in the question of who's the

25  CEO to run the company, or that gets involved in capital

1    allocation decisions, such as what is the policy direction of

2    the company?  Are they going to make a significant acquisition?

3    This is not the day-to-day control of the operations of Forest

4    River.

5             In fact, the decision in *LinkAmerica* -- it's an

6    Indiana decision -- says that every parent of a wholly-owned

7    subsidiary has absolute control, in that the parent has the

8    power to direct the subsidiary to take any act the parent

9    desires.  Then court goes on to say:  What we're talking about

10   in terms of control for purposes of jurisdictional purposes, it

11   refers to the management of a subsidiary's operational

12   activities, not passive ownership or policy direction.

13            We haven't seen anything, Your Honor, from the

14   plaintiff suggesting that Berkshire Hathaway has done anything

15   other than the normal incidents of a parent company owning a

16   wholly-owned subsidiary.  Nothing whatsoever.

17            Then we have the question of specific jurisdiction:

18   Is there something that happened in this case that Berkshire

19   did to subject Berkshire to the jurisdiction of the court for

20   Mr. Mart's complaint?  And that's where the plaintiff refers to

21   these telephone conversations that he had with Mr. Buffett in

22   the fall of 2008.

23            And we stand on what we said, Your Honor, in our

24   papers, that those conversations were initiated by the

25   plaintiff; that if there were a couple instances where

1 Mr. Buffett placed a call to Mr. Mart, that was in response to

2 Mr. Mart placing a call to Mr. Buffett.  And how Mr. Buffett

3 giving Mr. Mart the courtesy of a return call can be viewed as

4 inserting himself into the controversy is beyond me.

5   So we have a case where the entire stream of

6 communications with Berkshire over this issue were initiated by

7 the plaintiff, and the cases are uniform; that you cannot

8 assert specific jurisdiction based on telephone conversations

9 where the defendant was simply responding to what the plaintiff

10 had initiated.

11   One of the cases that the plaintiff relies on for

12 the argument that a few telephone calls can subject a company

13 to specific jurisdiction is this *Woodmar* case, which,

14 interestingly, involved several conversations where the

15 contract at issue was actually negotiated.  Far cry from what

16 we are talking about here.

17   I think it bears emphasizing, Your Honor, a point

18 that we made in our papers; and that is, in the amended

19 complaint what the plaintiff alleges Berkshire did and what the

20 plaintiff alleges Mr. Buffett did was not take action with

21 respect to his complaint.  That is the crux of his complaint

22 here.

23   He alleges in paragraphs 44 and 45 that Mr. Buffett

24 took no action to correct the deficiencies.  He alleges in

25 paragraph 61 that he received no assistance from Mr. Buffett

1    other than a return call from his assistant with a message that

2    Buffett -- and this is a quote from the complaint -- that he

3    just can't get involved in issues like this at subsidiaries.

4            In paragraph 61, again, he alleges that Mr. Buffett

5    looked the other way.

6            Now, I'm not saying that these allegations give rise

7    to a SOX violation, but this is what he put in his complaint.

8    He is trying to get liability against Berkshire on the claim

9    that they were required to do something but they didn't.  Now,

10   when he tries to contest our jurisdictional motion, he wants

11   this court to give him discovery so that he could learn

12   something that's inconsistent with the very basis of liability

13   alleged in his complaint.  I submit that is something that he

14   can't do.

15           One further point, Your Honor.  I find it remarkable

16   that in the reply brief the plaintiff says no fewer than 14

17   times that the reason he needs to take Mr. Buffett's deposition

18   is to independently verify what his own client claims he knows.

19   Same thing with Mr. Hamburg; no fewer than seven times he says:

20   I need to verify things.

21           That's not what the cases say.  I direct your

22   attention to the *Ellis* decision where the court said, in

23   referring to a contract case, it would be a rare case, indeed,

24   where a plaintiff would need to take jurisdictional discovery

25   over the facts leading to a contract since he's a party to it.

1           What plaintiff is entitled to if he makes a

2    colorable showing -- and we don't think he has -- but if he has

3    made that, then he is entitled to get jurisdictional discovery

4    of things that he claims he needs to support his argument that

5    there is general jurisdiction or specific jurisdiction; not to

6    take the deposition of Berkshire's officers because he needs to

7    verify what is in his own notes.

8           He has said to us -- and it's part of the

9    correspondence that has been attached to these pleadings --

10   that he has detailed notes of every conversation.  If so, he

11   doesn't need this discovery that he is claiming.  I don't want

12   to speculate as to why he is seeking it, but it's certainly not

13   to get what he claims he needs to oppose the motion.

14           As to the comments that the court has heard about

15   Mary Ann Todd, our law firm represented Berkshire in the

16   initial acquisition of Forest River in 2005, and then

17   represented Forest River in connection with its acquisition of

18   Priority One; it represented Forest River in connection with

19   its proposed acquisition of Coachmen.  How that could possibly

20   tie into Berkshire Hathaway being subject to general or

21   specification jurisdiction here, that's beyond me.  And to take

22   the deposition of a lawyer for Forest River or Berkshire

23   Hathaway on issues such as what kind of legal work did you do

24   for them obviously would be privileged.  I just don't

25   understand the basis for seeking her deposition.

1          As to the deposition of Mr. Forrest Krutter, he is

2     general counsel of Berkshire Hathaway.  They say they need his

3     deposition because there is a press report that he did some

4     investigation of the complaint.  How a post-dispute

5     investigation by a parent of alleged improprieties in a

6     subsidiary could be relevant to jurisdiction, that escapes me,

7     Your Honor.  I just don't see that at all.

8          So what we're really left with is the plaintiff

9     having no evidence whatsoever to support the argument of

10    general jurisdiction.  None whatsoever.  Therefore, it can be

11    nothing but a fishing expedition to take any of the depositions

12    that the plaintiff seeks.

13         Then as to specific jurisdiction, which is where

14    Mr. Buffett comes in, we could look at these conversations and

15    say:  So what?  Even if these conversations occurred precisely

16    as the plaintiff claims, so what?  They don't give rise to a

17    colorable basis for jurisdiction.  Plaintiff has that

18    information.  Put it in your declaration when you oppose our

19    motion for lack of personal jurisdiction and the court will

20    decide who is right.  But there is no basis for the plaintiff

21    to get out on a fishing expedition at this point and take

22    expensive depositions.

23         THE COURT:  All right.  To help me find the line,

24    where is it where a parent would subject itself to the

25    jurisdiction of the court by involving itself in the activities

1    of a subsidiary?  Because we're talking about terms of rather

2    high abstraction, where day to day is one thing and exerting

3    control, perhaps, is another.  Give me a little bit better

4    language that I can point to, to say:  All right.  There's the

5    line; you cross that, you are in trouble.  Stay behind it, you

6    are okay.  Is there anything --

7             MR. LERMAN:  Your Honor, I don't have any cases that

8    I could give you to say here is the bright line.  The court, of

9    course, is familiar with alter ego cases where the parent has

10   failed to comply with corporate formalities.  You could have

11   situations, I imagine, where a parent has basically treated a

12   subsidiary as if it were just a division, where it basically

13   made the day-to-day decisions:  details on what kind of product

14   you're going to create and how much you're going to spend on

15   office space and who you are going to hire to be your division

16   managers.  You could see that at some point.

17             There could be involvement of a parent in the

18   nitty-gritty, day-to-day decisions of a corporation.  How is it

19   that Forest River conducts itself on a day-to-day basis?

20   Decisions on what models of recreational vehicles we're going

21   to produce and how many numbers this year and in what way we're

22   going to do it, really getting involved.

23             Now, there is a level, Your Honor, where a parent

24   company does get involved in what I'll call capital allocation

25   decisions, where a subsidiary has a certain amount of capital

1   available, either from its own internal revenue or because the

2   parent can make capital available; and in those cases, the

3   parent can certainly get involved in policy directions:  Are

4   you going to spend X amount of dollars to buy another company?

5   That is not day-to-day management.

6         THE COURT:  So you're saying the discussions and

7   information regarding the acquisition of Coachmen, that is not

8   day to day; that's something extraordinary?

9         MR. LERMAN:  Those are extraordinary transactions,

10  and I don't think that the plaintiff would even argue that an

11  acquisition would be normal day-to-day type of activities.

12  Those are always viewed as extraordinary transactions.

13        THE COURT:  All right.

14        MR. LERMAN:  Thank you.

15        THE COURT:  Thank you.

16        Anyone for Forest River?

17        MR. LIPINSKI:  Yes, Your Honor.

18        Forest River has cited -- in our papers we talk

19  about the fact that there needs to be a colorable showing and

20  that the plaintiff can't engage in a fishing expedition, and

21  one of the things that the cases we cite talk about is where

22  you meet an affidavit with speculation, and that's essentially

23  what we have here.

24        Our problem is that we have submitted some

25  affidavits which were very direct.  Mr. Rowe has said that he

 1   was there and did tell Mr. Mart that he was being terminated on

 2   November 3.  The things they want from Mr. Rowe -- and what we

 3   tried to get through was -- they want four things from him:

 4   One is that he was being paid on November 3 and he continued to

 5   be paid; that he had received benefits on November 3 and

 6   continued to receive those; that he didn't get his COBRA.

 7          Those are facts that are really verifiable, not in

 8   dispute, and clearly within the knowledge of Mr. Mart.  So I

 9   don't know why they need verification in a deposition; those

10   are things that are not there.

11          The other speculation they have is that somehow,

12   despite the affidavits that are on file, Forest River believed

13   it had authority, didn't have authority, and they want to

14   speculate that something happened.  And we think that

15   speculation is not sufficient here -- they haven't made the

16   colorable argument -- for the type of discovery that they've

17   requested.

18          We think the burden is on the plaintiff to show that

19   they need discovery on the facts in connection with the motion,

20   and they just haven't done it here.  So we don't believe

21   that what we've seen in the way of requests from the plaintiff

22   are sufficient for Mr. Rowe's deposition to go forward.

23          THE COURT:  Before you slip away, Mr. Lipinski --

24   and I want to hear from Mr. Lerman, but it is in a slightly

25   different context so I will go with you first -- I'm usually a

 1   little bit more willing to allow a deposition of a declarant

 2   than an affidavit, which is to say an affidavit is submitted.

 3   I think it's appropriate that if there's a contest or a dispute

 4   over what the declarant said, well, tee it up, have a

 5   deposition.  Because, as we all know, declarations are drafted

 6   by counsel.  It is not necessarily the words of the declarant,

 7   so let's put the witness under oath and take the deposition.

 8   They are short depositions, or they should be.

 9           So why wouldn't that be an appropriate way to

10   address it?  In other words, I hear your philosophical or

11   fundamental objections to Mr. Rowe.  You're essentially saying,

12   look, he was terminated on November 3.  That's the deal.  He

13   was terminated.  All of our actions subsequent to that point

14   points to it; and if there's any confusion as to the date, it's

15   the plaintiff's confusion, but not as to the legal consequences

16   of it, so we shouldn't be subjected to it.  On the other hand,

17   why shouldn't the plaintiff be entitled to test that affidavit

18   with the deposition of Mr. Rowe?

19           MR. LIPINSKI:  First, the standard that we have

20   talked about is the colorable showing.  We don't believe we've

21   heard that, but that's certainly something that this court can

22   consider.  Mr. Rowe has provided what we believe to be clear

23   statements about what happened and we don't know that there is

24   a dispute over that.  But it is possible -- and as often

25   happens, as Your Honor has stated -- that an affiant will be

```
 1   asked about his affidavit.
 2            THE COURT:  Now, Mr. Lerman, if you would respond.
 3   I understand the objection to Berkshire Hathaway generally, but
 4   it, too, has submitted an affidavit through one of its
 5   officers, Mr. Hamburg, so why not submit him?  I believe it was
 6   perhaps you -- someone offered him up in preliminary
 7   discussions before we got to this point.  So why not allow
 8   that?
 9            MR. LERMAN:  And in fact we did offer him up.  We
10   did not feel plaintiff provided a colorable basis, but we
11   thought, let's try to resolve this thing.  We live in the real
12   world, and we did submit his declaration, so we will make him
13   available for a three-hour deposition.  He is the chief
14   financial officer.  That's a pretty high-level person at
15   Berkshire.  Plaintiff said no, and so we're here.
16            But if the court saw that as a reasonable way to
17   resolve these issues, I couldn't say that it's not a reasonable
18   path out of this motion.
19            THE COURT:  Okay.  Mr. Kennedy, I will give you the
20   last shot at it.
21            MR. KENNEDY:  Your Honor, in my last shot I will
22   begin with providing a little more context on the generous
23   offer to take the deposition of Mr. Hamburg, where they claim
24   plaintiff said no.
25            I think they may have forgotten that they said that
```

1   they would only provide that witness if we agreed to bifurcate

2   the issues in the Rule 12(b) motion, allow just the

3   jurisdictional issues to go forward now, and at a later time

4   decide the issues concerning the SOX claim, which, given those

5   two together, we decided that was not an efficient way to

6   resolve the issues.

7           So it was not a generous offering of Mr. Krutter for

8   three hours; it was a generous offer of let us bifurcate these

9   proceedings and then we will give you Mr. Krutter, to which we

10  said no.  However, if they are now saying they will provide

11  Mr. Krutter, then that would be wonderful; we would accept it.

12  However, we don't think that's sufficient, and here's the

13  bugaboo, so to speak -- technical phrase -- the bugaboo here is

14  he is not privy and does not have personal knowledge of all of

15  the issues in which plaintiff seeks to raise to demonstrate his

16  burden of proof that he has to defeat these 12(b) motions.

17          If the court were to simply say you are allowed to

18  have the depositions of the declarants, that would prohibit

19  plaintiff from getting discovery that he needs and, in fact,

20  dictate to the plaintiff what evidence he will be able to

21  obtain.  And so that would not be sufficient, which is why the

22  plaintiff recognized himself that he did not need certain of

23  the declarants' depositions -- did not need Mr. Liegl's

24  deposition, did not need Mr. Greenlee's deposition, even though

25  they provided declarations -- because there was other more

1    persuasive evidence that could be obtained through people with

2    personal knowledge.

3            So there is no case that says you are only entitled

4    to the declarants.  And, in fact, in the *Andersen* case, the

5    *Andersen* case says that a plaintiff is entitled to

6    jurisdictional discovery if he can show that the factual record

7    is at least ambiguous or unclear.

8            THE COURT:  Let's pick on that word because it's

9    sticking in my head, the plaintiff is "entitled."  Is it really

10   a question of an entitlement, or is the language, perhaps,

11   better put that the court should exercise its discretion and

12   allow discovery?  In other words, if the court reaches that

13   conclusion, do you get it as a matter of right, or isn't this

14   entire question a question of discretion?

15           MR. KENNEDY:  Here's the rule, Your Honor, step

16   one -- sorry to keep pointing at you with my pen -- a plaintiff

17   must make a threshold prima facie showing with some competent

18   evidence demonstrating that personal jurisdiction might exist

19   over a defendant in order to be entitled to jurisdictional

20   discovery.

21           So if a plaintiff has shown colorable evidence that

22   might -- to demonstrate personal jurisdiction -- might exist,

23   then the entitlement arises.

24           THE COURT:  So then it's a matter of right?

25           MR. KENNEDY:  That's what the court said in this

1    case.

2              THE COURT:  So my question back to you -- because it

3    might be relevant depending upon how I rule -- if I find that

4    you have done that but in the exercise of my discretion decline

5    to allow the discovery that you seek, is that an error of law

6    or is it just an abuse of discretion?  I mean, it's two

7    different standards; one is higher and one is lower.

8              MR. KENNEDY:  It would be discretionary, Your Honor,

9    clearly.  There is no doubt about that.  We are entitled to

10   discovery, and then the question becomes:  What discovery are

11   we entitled to?  And it is our position --

12             THE COURT:  You are mixing the words again.  That is

13   what is confusing to me.  You say it's discretionary but then

14   you are entitled to discovery.

15             MR. KENNEDY:  Well, I guess this is what -- to

16   sharpen the point, once we make the prima facie showing, the

17   caselaw is that we are entitled to discovery.  The discretion

18   comes in as to how to limit the focus of that discovery.  That,

19   I believe, is where the discretion comes in.  If the court says

20   no discovery, I believe that's abuse of discretion based on my

21   reading of the caselaw.  If the court says you are entitled to

22   discovery A, B, C, D and E but not F, G or H, that's where the

23   act of discretion comes in.  It's in the definition of what is

24   targeted discovery for personal jurisdiction.

25             So if we apply that standard and use that as the

```
 1    standard for the, quote, entitlement, then I think it's clear
 2    that we then have to take a look at what is plaintiff's theory
 3    of the case.  And plaintiff's theory of the case is that there
 4    is specific and general jurisdiction based on communications
 5    with Mr. Buffett.  There is specific and general jurisdiction
 6    established through the declarant, Mr. Hamburg, and there is
 7    specific and general jurisdiction through the deposition of
 8    Mary Ann Todd.
 9            On the SOX issue -- and I believe that Mr. Buffett
10    also has information regarding the SOX claim based on his
11    communications, so I didn't mean to sidestep that one.  So
12    Mr. Buffett has all of the issues.  Mr. Hamburg on personal
13    jurisdiction, specific and general, and the same with Mary Ann
14    Todd, specific and general.  Then we go to just the SOX issue,
15    which is Mr. Rowe.
16            So we are asking for two affiants/declarants and
17    witnesses who were not affiants/declarants based on our theory
18    of the case that jurisdiction might exist.
19            THE COURT:  All right.  Thank you.  That's a good
20    summary.
21            Now, before you slip away from the podium, let's go
22    back to the matter that I addressed initially.  And that is,
23    what deadlines need to be adjusted with respect to responding
24    to the motions to dismiss; how shall we handle that procedural
25    issue?
```

```
 1              MR. KENNEDY:  Your Honor, I believe the parties
 2   nearly came to an agreement.  We had proposed 30 days after the
 3   completion of discovery, that we would file our responses to
 4   the discovery to the 12(b) motions within 30 days.  We had
 5   proposed that.  I believe that Forest River agreed to it.  I
 6   had misunderstood a letter from Berkshire Hathaway; I thought
 7   that they had said 30 days, and actually they said 21 days.  So
 8   that seems to be the time period that we have, whether we
 9   should have 21 days or 30 days after the completion of
10   discovery.  And for purposes of clarity, I would suggest that
11   be from the date that we actually get any deposition
12   transcripts because sometimes that takes the court reporter a
13   bit of time.
14              So if we can get them from the time that we get the
15   deposition transcripts, if any, or from the time we've
16   recovered documents, if any, that would be sufficient time to
17   respond.
18              THE COURT:  All right.  I'll hear from either of the
19   defendants on that question, when responses should be due.
20              MR. LERMAN:  Your Honor, we had proposed that the
21   plaintiff file his opposition 21 days after either the
22   completion of any discovery ordered by the court or, if the
23   court denied the motion for discovery, 21 days from the date
24   that the court denied it.
25              In terms of this little add-on, when we get the
```

```
 1    transcripts, as the court knows, sometimes that could delay
 2    things for a couple of weeks, unless the plaintiff ordered them
 3    on an expedited basis; and if the plaintiff did, then he would
 4    have them within a day or so.  So I would think 21 days
 5    following the completion of any discovery that's ordered by the
 6    court would make a lot of sense.
 7              THE COURT:  Okay.
 8              MR. LIPINSKI:  Your Honor, we did suggest 30 days
 9    after the completion of discovery, if the court should order
10    it.  I also agree with Mr. Lerman, that this court reporter
11    issue is not a reason to extend.  We can usually get those
12    fairly quickly.  That's what our suggestion was.
13              THE COURT:  Well, if the court orders depositions,
14    it is presumed that they will be short because they are going
15    to be restricted in scope.  So that would suggest to me that
16    the deposition transcripts should not be particularly long and,
17    therefore, easier to produce in short order.
18              All right.  I think I am sufficiently apprised at
19    the issues.  I want to get a ruling out quickly.  Today is
20    Monday.  It will take me some time to prepare this.  One of the
21    problems with my injury is the limited use of my right hand
22    which limits me from not only writing but typing.  So it's
23    going to be a little bit of a challenge, but we will get the
24    work out as best we can.
25              MR. LIPINSKI:  Your Honor, if I may?
```

1          THE COURT:  Yes, Mr. Lipinski.

2          MR. LIPINSKI:  One of the other issues we raised in

3    our briefing was we believe that there is a letter --

4          THE COURT:  Oh, yes, you're going to talk about the

5    letter that references the settlement.

6          MR. LIPINSKI:  Yes.

7          THE COURT:  I'm glad you raised that because I did

8    want to address that.

9          You think it should be stricken.  I have a different

10   idea of that and let me see before you sit down what your

11   response would be.  I've heard the arguments -- rather, I am

12   aware of the arguments -- and it does appear that this is

13   probably covered under Rule 408.  I'm not sure that it is

14   necessary, though, to have it stricken.  My suggestion would be

15   that I could order it sealed.  That way it's before the court

16   so if Judge Moody -- or any other judge -- wishes to know what

17   the matter of it was, that's fine, but it does not pertain to

18   any questions as to the evidentiary weight and certainly it's

19   removed from public view.  Would that satisfy?

20         MR. LIPINSKI:  I think that's acceptable at this

21   point, Your Honor.  We're not going to waive the issue about

22   its use, but I think that would be an acceptable result right

23   now.

24         THE COURT:  All right.  Mr. Kennedy, any objection

25   if the court -- in response to their concerns that that letter

1    treads on settlement discussions, that it should be at least

2    under seal so it's not out there for public view, and you can

3    argue at a later date what evidentiary value it may have at

4    whatever tribunal sees or hears it?

5           MR. KENNEDY:  That last part is very important,

6    Your Honor, that we are not waiving any issue concerning

7    whether it ought to be seen.  With that understanding, we have

8    no objection to it being sealed.

9           THE COURT:  I think that's the better way to handle

10   it because it is sensitive and that's really not necessarily

11   before the court, as to its evidentiary value.

12          Yes, Mr. Lerman?

13          MR. LERMAN:  Your Honor, if the court is inclined to

14   order some depositions, can I ask the court to consider whether

15   it would indicate just what a short deposition would be?  If I

16   could ask the court to consider in any order indicating how

17   long the deposition would be, I think that would avoid any

18   disagreements between counsel.

19          THE COURT:  I have my own version, but let me hear

20   suggestions from counsel because you are more familiar with the

21   facts and circumstances.  Let me first turn to Mr. Kennedy.  It

22   would be his deposition.  I would envision a short deposition

23   because the whole point of this discovery, if it's to be had at

24   all, is to be very narrow and focused.  What would you suggest?

25          MR. KENNEDY:  Yes, Your Honor.  For example, I

```
1   imagine that I could complete the deposition of Mr. Buffett in
2   an hour and a half; whereas, I might need more than three hours
3   for the deposition of Mr. Rowe.  One way that we have done this
4   before -- and I have seen this done before -- is for the court
5   to say:  All right.  You get nine hours on these people; and
6   once you eclipse nine hours, you must stop.  Or the other
7   alternative is to come up with an hour and a half for this
8   witness, and you probably need more time for this witness,
9   three hours each, adding up to nine or twelve, whatever it adds
10  up to, might be another way.  I have seen it done both ways,
11  but I will tell you I know that some witnesses I only need for
12  an hour and a half or so.  Other witnesses I might need for a
13  tad over three hours.  I've suggested three hours.  So for
14  whatever it is worth, I think there are a number of ways you
15  could do it.
16          THE COURT:  So you're indicating not to exceed three
17  hours on any witness and in the aggregate not to exceed nine?
18          MR. KENNEDY:  Since we've asked for four witnesses,
19  twelve.
20          THE COURT:  I thought I heard you say nine?
21          MR. KENNEDY:  That's because I didn't do my math
22  correctly.
23          THE COURT:  That was a math error.
24          MR. KENNEDY:  It was.
25          THE COURT:  So should you live with that error?
```

 1          MR. KENNEDY:  Your Honor, if you give me these

 2     witnesses, I will live with that error.

 3          THE COURT:  Mr. Lerman or Mr. Lipinski, with respect

 4     to limitations, what I heard was not to exceed three on any

 5     one, which just happened to be a number I had in my head, but

 6     he's also tossed out an opportunity for an aggregation of

 7     allowing him to take longer on some and less on others.  What

 8     are your thoughts about the aggregation?

 9          MR. LERMAN:  Well, Your Honor, the aggregation -- to

10     the extent that it included anyone from Berkshire other than

11     Mr. Hamburg, who is the only one who submitted a declaration --

12     would be very, very troublesome to us.  We did suggest three

13     hours for Mr. Hamburg.  If more than one deposition is going to

14     go forward, we think an aggregation would make sense.  It

15     certainly shouldn't be more than nine hours and quite possibly

16     fewer than nine hours, as well.  As to Mr. Hamburg, I think

17     three hours would be more than enough time to question him on

18     the items that are in his declaration.

19          THE COURT:  All right.  Mr. Lipinski on Mr. Rowe?

20          MR. LIPINSKI:  Mr. Rowe has a very direct and short

21     involvement here.  I don't know why a deposition of him should

22     exceed one hour at this point on the jurisdictional question.

23          THE COURT:  All right.  Very well.  Counsel, the

24     matter then is submitted.  Let me deal with my issues and try

25     to get an order out promptly.

```
 1              Anything else before we adjourn?

 2              All right.  Very well.  Thank you, Counsel.

 3              MR. LERMAN:  Thank you, Your Honor.

 4              MR. LIPINSKI:  Thank you, Your Honor.

 5              MR. KENNEDY:  Thank you, Your Honor.

 6              (Proceedings adjourned at 12:18 p.m.)

 7

 8                          CERTIFICATION

 9

10       I, Joanne M. Hoffman, Federal Official Court Reporter,
   certify that the foregoing is a correct transcript from the
11 record of proceedings in the above-entitled matter.

12
                /s/Joanne M. Hoffman      09/20/2010
13              Joanne M. Hoffman             Date

14

15

16

17

18

19

20

21

22

23

24

25
```