# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| BRAD A. MART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10 CV 118 |
| | ) | |
| BERKSHIRE HATHAWAY, INC., | ) | |
| FOREST RIVER, INC., and | ) | |
| PETER J. LIEGL, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION AND ORDER</u>

Defendants Forest River Inc. ("Forest River") and Peter J. Liegl ("Liegl") (collectively called the "FR defendants") filed motions to dismiss plaintiff Brad A. Mart's ("Mart") state law claims (DE # 27) and his Sarbanes-Oxley ("SOX") claim against them. (DE # 29.) Defendant Berkshire Hathaway ("Berkshire") filed a motion to dismiss the cause of action against it for lack of personal jurisdiction and lack of subject matter jurisdiction. (DE # 32.) Mart filed an emergency motion for leave to conduct limited discovery related to the questions of personal jurisdiction and subject matter jurisdiction in order to allow him to respond to the motions to dismiss. (DE # 36.) Magistrate Judge Christopher Nuechterlein issued an order granting some parts and denying other parts of this motion. (DE # 58.) Mart has filed objections to Magistrate Judge Nuechterlein's order pursuant to FEDERAL RULE OF CIVIL PROCEDURE 72(a). (DE # 60.) He also moved for oral argument on the RULE 72(a) objections and on his motion for judgment on the pleadings as to Forest River's and Liegl's counterclaims

against him. (DE # 65.) For the reasons discussed below, the objections to the Magistrate

Judge's decision will be **overruled** and the motion for oral argument will be **denied**.

### Mart's Request for Oral Argument

Mart filed a motion requesting oral argument, pursuant to LOCAL RULES OF THE

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA RULE 7.5(a), on

his RULE 72(a) objections and on his motion for judgment on the pleadings on Forest

River's and Liegl's counterclaims against him. (DE # 65.) He argues simply that oral

argument would assist the court in understanding his arguments for both motions. (*Id.*)

The FR defendants filed a response in opposition to this motion arguing that Mart did

not meet the requirement of RULE 7.5(a) to "set forth specifically the purpose of the

request." (DE # 70 at 2.) They also argue that Mart's request for oral argument on his

motion for judgment on the pleadings is procedurally flawed because he did not file it

along with a brief on that motion. (*Id.* at 3.) Mart filed a reply which primarily addresses

the argument that his motion for oral argument on his motion for judgment on the

pleadings was procedurally flawed. (DE # 72.) He argues that the FR defendants added

more confusion to the motion for judgment on the pleadings by filing a surreply before

they had leave to file it. (*Id.* at 3.) Apart from that, in his reply, Mart does not provide

any specific reasons that oral argument is needed for either motion.

As the FR defendants point out, Magistrate Judge Nuechterlein has already held

a hearing on the motion for emergency discovery and the parties have engaged in

extensive briefing on the issues involved in the RULE 72(a) objections. "The granting of a

motion for oral argument shall be wholly discretionary with the court,"

N.D. IND. L. R. 7.5(a), and the court finds that oral argument is neither necessary nor

helpful to the determination of the issues raised in the RULE 72(a) objections.

Mart has also not specifically set forth the purposes for oral argument on his

motion for judgment on the pleadings. Again, the parties have submitted extensive

briefing on both the motion itself and the motion to file a surreply in that case. At this

point, it does not appear that oral argument on that motion is necessary. If and when

the court has any questions, the court will direct that oral argument be held pursuant to

LOCAL RULE 7.5(a). Thus, Mart's request for oral argument (DE # 65) is **DENIED**.

## Mart's RULE 72(a) Objections

## I.     BACKGROUND

As neither party has objected to Judge Nuechterlein's characterization of the

facts, this court will draw upon that to provide a brief overview of the case. (*See* DE # 58

at 1-3.) Berkshire is a Delaware corporation with its sole place of business in Nebraska.

(*Id.* at 2.) It is not registered to do business in Indiana; does not have a registered agent,

an office or any real estate in the state; and does not sell or manufacture products in

Indiana. (*Id.*) Forest River is a subsidiary of Berkshire with its principal place of

business in Indiana. (*Id.*)

Mart entered into an agreement with Berkshire to become its CEO. (*Id.*) Liegl was

the outgoing CEO. (*Id.*) Mart alleges that during his transition to the position of CEO, he

observed Liegl and other Forest River employees committing fraud against and

siphoning assets from Forest River. (*Id.*) Mart communicated his observations to Berkshire's CEO, Warren Buffet ("Buffett"). Mart contends that he had at least nine conversations with Buffet, some of which were placed by Buffet. (*Id.*) Mart claims that Berkshire took no action on his complaints, and after a period of harassment from Liegl and other Forest River employees, Mart was terminated from Forest River. (*Id.* at 3.) The parties dispute the date of termination. (*Id.*) Forest River argues that Mart was terminated on November 3, 2008, and Mart argues that he was terminated on January 8, 2009, retroactive to January 1, 2009. (*Id.*)

Berkshire maintains that despite its parent-subsidiary relationship to Forest River, the two companies are separate legal entities. (*Id.* at 2) Berkshire acknowledges that it has responsibility for significant capital allocation decisions for Forest River and has the authority to select Forest River's CEO. Berkshire denies any involvement in Forest River's termination of Mart. (*Id.*)

After his termination, Mart filed a SOX complaint with the United States Department of Labor. (*Id.* at 3.) Mart then filed a complaint in this court stating that claim and additional claims of breach of contract, retaliatory discharge, and defamation. (DE # 1.) The defendants then filed three motions to dismiss as mentioned above. Mart filed a motion requesting targeted, emergency discovery to enable his response to the motions to dismiss the SOX claims for lack of subject matter jurisdiction and Berkshire's motion to dismiss for lack of personal jurisdiction. (DE ## 36, 37.) The defendants filed briefs opposing Mart's motion (DE ## 49, 50), and Mart filed a reply. (DE # 54.) Mart

also asked for oral argument on his motion. (DE # 39.) On July 26, 2010 (DE # 56), the magistrate judge listened to oral arguments that lasted for about an hour and fifteen minutes. (DE # 74 at 1, 47.)

In his motion for targeted discovery, Mart asked to depose Berkshire's CFO, Mark Hamburg ("Hamburg"), to help establish that the court has general jurisdiction over Berkshire. (DE # 58 at 5.) Judge Nuechterlein granted this request. (DE # 58 at 7.) Mart also asked to depose Buffett in order to establish specific jurisdiction over Berkshire. (*Id.*) Judge Nuechterlein denied this request because he found that Mart had not shown a colorable basis for jurisdiction through Buffet's specific acts and that Mart already seemed to have much of the information that he sought from Buffett. (*Id.* at 8-10.) Next, Mart asked to depose Berkshire Secretary, Forrest Krutter ("Krutter") to determine if Krutter's internal investigation into "business issues" at Forest River reflected that Berkshire had a high degree of control over Forest River's operations. (*Id.* at 10-11.) Judge Nuechterlein denied this request because Mart had not shown how it would help him establish personal jurisdiction over Berkshire. (*Id.* at 11.) Mart also sought to depose Berkshire's legal counsel, Mary Ann Todd ("Todd"). (*Id.*) Magistrate Judge Nuechterlein denied this request because the low value of any jurisdictional information that could be obtained through Todd was outweighed by the invasion of questioning her about privileged legal matters. (*Id.* at 11-12.) Finally, Mart asked to depose Forest River's Director of Human Resources, Jeff Rowe ("Rowe") about the timeliness of the SOX claim. Judge Nuechterlein granted this request. (*Id.* at 12.)

Additionally, Mart asked for the disclosure of several types of documentary evidence. Judge Nuechterlein denied this request finding that Mart had not stated why these documents were needed and that the requests appeared to be directed not towards the narrow issue of jurisdiction, but to the merits of the case. (*Id.* at 13.)

In his FEDERAL RULE OF CIVIL PROCEDURE 72(a) objections Mart argues that he should be able to depose Buffett, Krutter, and Todd; that the time to depose Hamburg and Rowe should be extended; and that he should be permitted limited document production. (DE # 60 at 1.)

## II.    LEGAL STANDARD

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 72(a), when a party objects to a ruling of a magistrate judge, a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." The district court reviews the magistrate judge's factual findings under the "clear error" standard and his legal determinations under the "contrary to law" standard. *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, No. 3:08-cv-490, 2010 WL 3119487, at *2 (N.D. Ind. Aug. 5, 2010).

The United States Court of Appeals for the Seventh Circuit has articulated that the clear error standard "means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). In the context of judgments made pursuant to FEDERAL RULE OF CIVIL

PROCEDURE 52(a), the Supreme Court and the Seventh Circuit have elaborated that under a clear error standard a district court cannot reverse the decision of a magistrate judge simply because the district judge would have decided the case differently. *See Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1983); *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006). Clear error is an "extremely deferential standard of review," *id.*, and deference is particularly appropriate where, as here, the magistrate judge "has managed the case from the outset and developed a thorough knowledge of the proceedings." *Vision Ctr. Nw., Inc. v. Vision Value, LLC*, No. 3:07-cv-183, 2008 WL 5191456, at *1 (N.D Ind. Dec. 10, 2008) (unpublished) (internal quotations omitted). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Heartland,* 2010 WL 3119487, at *2 (internal quotations omitted).

In this case, Judge Nuechterlein's order dealt with granting discovery on the question of personal jurisdiction. While a court may allow this type of discovery, "a plaintiff does not enjoy an automatic right to" it "in every case." *Andersen v. Sportmart, Inc.,* 179 F.R.D. 236, 241 (N.D. Ind. 1998). In order to be entitled to jurisdictional discovery, a "plaintiff must make a threshold or prima facie showing with some competent evidence demonstrating that personal jurisdiction *might* exist over a defendant in order to be entitled to jurisdictional discovery." *Id.* A plaintiff should be allowed to undertake jurisdictional discovery if she can show "that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Id.* While this standard is "quite low," "a plaintiff's discovery request will nevertheless be denied if it is only based upon

7

'bare,' 'attenuated,' or 'unsupported' assertions of personal jurisdiction, or when a plaintiff's claim appears to be 'clearly frivolous.'" *Id.* at 242. A grant of jurisdictional discovery "should not be expansive since it does not go to the merits of the case, yet it should be broad enough to allow [a plaintiff] to pursue [his personal] jurisdiction theor[y] until [it] is conclusively ruled out." *Owner Operator Resources, Inc. v. Maag,* No. 1:02-cv-332, 2003 WL 21911061, at *7-8 (N.D. Ind. Mar. 28, 2003) (unpublished) (quoting *Anderson,* 179 F.R.D. at 244).

Personal jurisdiction can exist through either specific or general jurisdiction. Specific jurisdiction exists if the cause of action arises out of a defendant's minimum contacts with the forum and the court finds that the exercise of personal jurisdiction "satisfies traditional notions of fair play and substantial justice." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 943 (7th Cir. 2000). The focus for specific personal jurisdiction is on "whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court" in that forum. *Id.*

General jurisdiction, for which the subject matter of the litigation is not considered, can be established by a showing that a defendant has "continuous and systematic general business contacts" with the forum that are sufficiently extensive to be tantamount to a constructive presence in the forum. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 787 (7th Cir. 2003) (internal quotations and citations omitted). To determine whether a forum has personal jurisdiction over a parent

8

company of a subsidiary located in that forum, a court considers the extent that corporate formalities are observed and the degree of control that the parent has over the subsidiary. *Reimer Express*, 230 F.3d at 943.

## III. ANALYSIS

### A. *Deposition of Warren Buffett*

Mart asked to depose Buffett on the issues of Buffett's alleged phone calls to Mart and Berkshire's control of Forest River's day-to-day operations – issues which he argues are relevant to the existence of specific and general jurisdiction over Berkshire in this court and the timeliness of his SOX claim, which determines whether this court has subject matter jurisdiction over that claim. (DE # 37 at 9-12, 16.) Magistrate Judge Nuechterlein denied Mart's request because Mart had failed to establish a colorable claim of specific personal jurisdiction over Berkshire through the contacts between Buffett and Mart and because Mart was seeking information to which he already had access. (DE # 58 at 8, 10.) For the same reasons, the magistrate judge determined that a deposition of Buffet on the timeliness of the SOX complaint was not justified. (DE # 58 at 10.) Mart objects to this decision, arguing that it is both contrary to law and clearly erroneous.

### i. Contrary to law

First, Mart argues that the decision was contrary to law because Judge Nuechterlein did not name or apply all three primary factors relevant to an analysis of whether exercising personal jurisdiction based on certain contacts meets the standards

of fair play and substantial justice. (DE # 60 at 3.) He argues that the order only focused on the first two factors, the nature and quality and quantity of the contacts, and neglected the third, "the relationship between those contacts and the cause of action." (*Id.* (citing *Woodmar Coin Ctr v. Owen,* 447 N.E.2d 618, 621 (Ind. App. Ct. 1983)).) He argues that once this factor is considered, a colorable basis for personal jurisdiction becomes clear because the phone calls between Mart and Buffett, the contacts in question, involved Mart's employment situation in Indiana and Mart's employment agreement was negotiated in Indiana. (DE # 60 at 4.)

In response, Berkshire contends that Judge Nuechterlein did consider the relationship between the contacts and the claim. (DE # 68 at 10.) The court agrees with Berkshire on this point. Judge Nuechterlein's order may not have listed the factor of relationship between the contacts and the claim, but he considered it nonetheless. The order states that the focus of Mart's claim against Berkshire is the latter's failure to intervene in Forest River's decision to terminate Mart. (DE # 58 at 9.) The order states that Buffett's statements that he did not get involved in personnel matters, show a low degree of control over Forest River and a weak relationship between the calls and the cause of action arising from Mart's termination. Based on this analysis, Judge Nuechterlein concluded that there was no colorable claim of personal jurisdiction. (*Id.*) The order also states that the phone calls were "few, brief, and legally insignificant." (*Id.* at 10.) Accordingly, Magistrate Judge Nuechterlein's decision rested on his evaluation of the relationship between the contacts and the claim.

Second, Mart argues that Magistrate Judge Nuechterlein's decision was contrary to law because it did not address his argument that the deposition of Buffett would help establish general jurisdiction over Berkshire. (DE # 60 at 5.) Mart contends that he could question Buffett about Berkshire's control of Forest River including a business review of Forest River and Buffett's sole ability to fire Mart. (DE # 60 at 5; DE # 37 at 10-11.) The latter issue is also relevant to the timeliness of Mart's SOX claim. (*See* DE # 37 at 16.)

Although Magistrate Judge Nuechterlein's order may not state the phrase "general jurisdiction"[1] in its analysis of the need to depose Buffett, it does address why Buffett's deposition is not needed for this issue. The order states that Mart already has the information that he seeks from Buffett regarding the content of the phone calls, content that Mart argues would address some issues of general jurisdiction. (DE # 58 at 10.)

Further, before reaching the issue of Buffett's deposition, Judge Nuechterlein granted Mart permission to depose Hamburg on the issue of Berkshire's parent-subsidiary relationship for the purposes of probing the existence of general jurisdiction. (DE # 6.) Accordingly, the order already granted Mart targeted discovery to address the issue of Berkshire's relationship to Forest River for the purposes of general jurisdiction. Thus, Judge Nuechterlein's order is not contrary to law.

---

[1] It is logical that the order focuses primarily on the need for Buffett's deposition in relation to specific personal jurisdiction. In his brief in support of his motion for emergency discovery, Mart had this label for his subsection on the need to depose Buffett on the issue of personal jurisdiction: "A deposition *duces tecum* of Warren Buffett will establish specific jurisdiction and possibly general jurisdiction." (*See* DE # 37 at 9.)

ii.     Clearly erroneous

Mart argues that Magistrate Judge Nuechterlein's order is clearly erroneous in its

determination that Mart already has much of the information that he seeks from Buffett.

(DE # 60 at 6.) He argues that Buffett "is the person with the most knowledge of what

actions Berkshire took in response to Mart's disclosure of Forest River's unlawful

activity" and that because Buffett has not submitted a declaration that he has no further

information to provide, he might have information about Mart's termination beyond

what Mart already has. (DE # 60 at 6.) Mart argues that the order is inconsistent because

it allows him to depose Rowe and Hamburg even though these depositions also sought

to verify what he already knows. (*Id.* at 7.)

Judge Nuechterlein's determination that Mart already has much of the

information he sought from Buffett is not clearly erroneous. First, Judge Nuechterlein's

decision did not rest solely on this basis. He also found that the contacts did not support

a colorable claim of personal jurisdiction.[2] Second, Judge Nuechterlein's decision to

deny Buffett's deposition because Mart already had the information he sought is not

clearly erroneous because he granted the depositions of Rowe and Hamburg. Mart

made a stronger showing that the evidence from Rowe and Hamburg would help

establish personal jurisdiction. Further, Judge Nuechterlein may have decided that

Buffett's testimony was more invasive, especially given that some of the information

_____

[2] Mart argues that these two findings are inconsistent. (DE # 58 at 6.) This is not
necessarily so. Because Mart has not shown a strong connection of the evidence to
jurisdiction, there is less of a need for him to acquire more information on the issue.

would already be covered by the depositions of Rowe and Hamburg.

Third, it was reasonable for Judge Nuechterlein to conclude that Mart had access to the information when Mart argued that he sought Buffett's deposition to verify what he knew about the conversations between the two men. Mart submitted his own declaration addressing the conversations between himself and Buffett that shows that he has information about their conversations. (*See* DE # 37-1 at 3.) In fact, in his motion for emergency discovery, Mart states that he seeks Buffet's deposition in order to "confirm" several parts of their conversation. (DE # 37 at 10.) Mart's reply in support of his motion for emergency discovery states thirteen times that he seeks the deposition to "independently establish" parts of his own account of their conversation. (*See* DE # 54 at 3-4.) In both briefs, Mart did not make any arguments that he needed information from Buffett beyond Buffett's account of their conversation. He did not raise the argument, as he does here, that Buffett may have information about Mart's termination and disclosures beyond these conversations.

This court has two concerns about Mart's assertions that he needs Buffett's deposition to find out if Buffett has information apart from their conversations. First, Mart's assertion that Buffett has the most knowledge about Berkshire's response to Mart's disclosures about Forest River intimates that Mart could be seeking to depose Buffett about the merits of this case which would be inappropriate at this time. Mart does not specify how information about the possibility that "Buffett may have had a meeting with Forest River personnel and instructed them to terminate Mart" would go

to the issue of personal jurisdiction in this forum or to timeliness of the SOX claim. (*See* DE # 60 at 6.) Second, Mart's conjecture about the type of information that Buffett may have appears to be the type of "bare," "attenuated," and "unsupported" assertions of personal jurisdiction that do not justify discovery. *Andersen,* 179 F.R.D. at 241.

### B. *Deposition of Forrest Krutter*

Magistrate Judge Nuechterlein denied Mart's request to depose Berkshire Secretary Forrest Krutter ("Krutter") on the issue of Berkshire's degree of control over Forest River's operations. (DE # 58 at 10-11.) Mart sought to question Krutter about his investigation into business issues at Forest River following Mart's termination. (*Id.* at 10.) The Magistrate Judge found that Mart had not shown that this investigation could help support his assertion that Berkshire had a high degree of control over Forest River. (*Id.* at 11.) Mart argues that "[n]othing in the record supports the proposition that Krutter's investigation was conducted in response to the lawsuit." (DE # 60 at 8.) Mart contends that the "review was a routine affair that Berkshire conducts in order to control and manage its subsidiaries," and apparently Mart's allegations just happened to be unveiled by this routine review. (*Id.* at 7-8.) In response, Berkshire argues that before he filed his RULE 72(a) objections, Mart had never argued that Krutter's investigation was a routine affair. (DE # 68 at 13.) It states that this argument is "wholly speculative." (*Id.*)

The court finds that Magistrate Judge Nuechterlein did not err in finding that the proposed questioning of Krutter about the investigation would have only an attenuated

relationship to personal jurisdiction. He was reasonable in concluding that Mart had not explained "the purported value of the evidence for assisting him with establishing jurisdiction." (DE # 58 at 11.)

The topics that Mart proposed to cover in a deposition of Krutter are not narrowly tailored to the issue of general jurisdiction. The questions that Mart proposed do not comport with the theory he now asserts, that the investigation was a routine affair that reflects the degree of control and involvement that Berkshire had in Forest River. Mart did not propose any questions about how often this type of review occurred, what type of information the review gathered, or how the review was used by Berkshire to inform its involvement with Forest River. Instead, the proposed areas of questioning focus on the review in relation to Mart's allegations and they appear to reach beyond the issue of personal jurisdiction to the merits of the case. For example, Mart proposed to question Krutter about "the information [he] discovered concerning Mart's allegations and results Krutter obtained during the course of his investigation." (DE # 37 at 13.) This questioning is not targeted at revealing the relationship between Berkshire and Forest River. It is focused on discovering the results of the investigation. That is not an appropriate line of questioning at this stage in the litigation.

C.    *Deposition of Mary Ann Todd*

Magistrate Judge Nuechterlein denied Mart's request to depose Berkshire's legal counsel, Mary Ann Todd, a corporate partner at the law firm representing Berkshire in this litigation. (DE # 58 at 11.) Mart had proposed to question Todd about Berkshire's

15

involvement in Forest River's acquisition of Priority One and Coachmen, both of which occurred with Mart's involvement on behalf of Forest River. (*Id.*) Judge Nuechterlein found this requested discovery, which would cover privileged legal matters, to be unjustified because it was "too invasive and too far attenuated" and would uncover only information of low jurisdictional value. (*Id.* at 11-12.)

As Judge Nuechterlein pointed out, Mart has not argued that there is any deficiency in the information he already has or that Todd's deposition would reveal anything new. (DE # 58 at 12.) In his request, Mart stated that he needed Todd's deposition to confirm his own account of Berkshire's involvement in the two acquisitions. (DE # 37 at 20-21.) Therefore, it was reasonable for Judge Nuechterlein to find that Mart already had the information he sought, making the invasive deposition unnecessary. Thus, the denial of this request was not a mistake.

> D.  *Extension of time to depose Hamburg and Rowe*

Judge Nuechterlein's order limited the depositions of Hamburg and Rowe to two hours each. (DE # 58 at 13.) Mart argues that this limitation is "unexplained, unreasonable, and not supported by the evidence" and that the time should be extended to three hours for each witness. (DE # 60 at 9.) Mart asserts that two hours is insufficient time "for a deposition of key witnesses to a dispositive issue and is likely to unfairly prejudice Plaintiff's effort to respond to Defendant's 12(b) motions." (*Id.*) Mart does not explain how the two hour limit will cause him unfair prejudice. He points out that Berkshire had offered to allow a three hour deposition of Hamburg. (*Id.*) Therefore,

Mart argues that the parties had already agreed upon a three hour deposition of Hamburg and thus Magistrate Judge Nuechterlein "created a dispute where none had originally existed." (DE # 71 at 5.) He contends that this type of decision "defeat[s] the general purpose of a conference among the parties." (*Id.*)

In response, Berkshire argues that the two hour limit for Hamburg's deposition is not clearly erroneous. (DE # 68.) Berkshire points out that Judge Nuechterlein granted Mart permission to question Hamburg on his three page declaration and "to probe issues regarding Berkshire authority to terminate Mart's employment," and Mart has not explained why he needs more than two hours to cover these limited topics. (DE # 58 at 7; DE # 68 at 14-15.)

In an effort to target discovery to the issue of jurisdiction, Magistrate Judge Nuechterlein did not grant Mart leave to pursue all of the lines of questioning laid out in his request. (*See* DE # 37 at 14.) This can account partially for why he reduced the time for deposition by an hour. Further, Mart did not accept Berkshire's offer of a three hour deposition of Hamburg and the parties were not able to reach an agreement through their conference. Instead, Mart sought assistance from the court in obtaining the discovery he wanted, and he specifically asked the court to involve itself with Hamburg's deposition. (*See* DE # 37 at 13-14.) Therefore, once Mart has asked the court to get involved in a discovery issue, he cannot then argue that the court should have stayed out of the issue and left it to the agreement of the parties.

Generally, Judge Nuechterlein expressed concern that some of Mart's discovery

requests were not targeted to jurisdictional issues, but rather were directed towards the merits of his case. (DE # 58 at 11, 13.) Judge Nuechterlein appears to have limited the time to depose Hamburg and Rowe to insure that the depositions would be focused on the targeted jurisdictional issues. (*See* DE # 58 at 14, "Mart is advised to focus his deposition inquiries on the narrow jurisdictional issues at issue in the motions to dismiss").

For both the depositions of Rowe and Hamburg, at the hearing, the defense lawyers argued that the depositions on the jurisdictional issues could be taken in less than three hours. Berkshire Hathaway's lawyer stated: "As to Mr. Hamburg, I think three hours would be more than enough time to question him on the items that are in his declaration." (DE # 74 at 46.) The FR defendants' attorney stated that the requested deposition of Rowe could be completed within one hour. (*Id.*)

Magistrate Judge Nuechterlein's decision to limit these depositions to two hours each was not "clearly erroneous." His decision is particularly deserving of deference because he is entrenched in the facts of this case, read extensive briefings on this issue, and held a hearing about the need for and nature of these depositions. It seems that Judge Nuechterlein reasonably limited these depositions to ensure that they would remain focused on the jurisdictional issues and would not become examinations on the merits of the case. Accordingly, Mart's objection as to the time to depose Rowe and Hamburg will be overruled.

*E.      Document production*

In his motion for emergency discovery, Mart requested documents from the FR defendants in the following categories: a) documents, including draft declarations, reflecting the creation of Forest River's employees' declarations; b) documents that the declarants reviewed or saw when considering their declarations; c) e-mail and other documents between Berkshire and Forest River employees regarding Mart's termination from October 1, 2008, to January 8, 2009; d) any documents showing visits by Berkshire employees to Indiana for Forest River and the business reason for the visits; e) documents showing capital provided to Forest River by Berkshire. (DE # 37 at 20.) Mart stated that these documents were needed to "further permit [him] the opportunity to satisfy his burden of proof on the issue of jurisdiction and the timeliness of his SOX claim." (*Id.*)

Judge Nuechterlein denied this request stating that some of the categories, such as drafts of declarations, sought potentially privileged information and that the majority of the requests were not targeted to the issue of jurisdiction. (DE # 58 at 13.) He found that Mart provided a limited explanation for why he needed these broad requests. (*Id.*) Given his stated reasons, Judge Nuechterlein did not commit plain error by denying these requests. First, documents related to the creation of Forest River's employees' affidavits are very likely to be privileged. *See e.g., Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 1:08-cv-173, 2009 WL 1543651, at *10 (N.D. Ind. June 2, 2009) (unpublished).

Second, Mart has not shown that this discovery is needed for the targeted issues

of personal and subject matter jurisdiction. Mart does not explain how these categories of information would help him satisfy his burden of proof for the issues of personal jurisdiction and timeliness of the SOX claim. For example, Mart has not shown how correspondence between Berkshire and Forest River would be relevant to the timeliness of his SOX claim. It appears that the timeliness of the SOX claim will most likely be evaluated based on Mart's notice of his termination. *Cf. Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 290 (7th Cir. 1986) (stating that for the purposes of determining the limitations period for the ADEA, "the significant date for purposes . . . the limitations period is that date upon which the employee receives notice of termination"). Even if Mart argues that the date of his notice of termination is not determinative, he has not shown how communication between Mart and Berkshire would be relevant to his ability to bring his SOX claim in a timely manner. Magistrate Judge Nuechterlein's assessment that this request seemed to reach into merit-based discovery was reasonable.

Further, Magistrate Judge Nuechterlein's order allows Mart to take depositions of Hamburg and Rowe to obtain information about personal jurisdiction over Berkshire and the timeliness of the SOX claim. It is reasonable for a magistrate judge to deny requests for extensive document production when depositions have been granted to address the targeted jurisdictional issues. *See e.g., Maag*, 2003 WL 21911061, at *7-8 (finding that the appropriate scope of discovery for addressing issues of personal jurisdiction contacts and an agency relationship was reached by granting depositions

and denying requests for "propound interrogatories" and document production).

As explained above, this court will not overturn Magistrate Judge Nuechterlein's rulings on Mart's motion for emergency discovery as they were neither clearly erroneous nor contrary to law. Thus Mart's RULE 72(a) objections (DE # 60) are **OVERRULED.** Also, as stated above, Mart's request for oral argument (DE # 65) is **DENIED**.

It is **ORDERED** that Mart must complete all depositions by **May 16, 2011**, and he must respond to the motions to dismiss by **May 31, 2011.**

**SO ORDERED**.

Date: March 14, 2011

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT
